**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **GREGORY L DASHIELL, JR.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 4:21-CV-03153** |
| **GC SERVICES LIMITED PARTNERSHIP,** | |
| **Defendant.** | |

**DEFENDANT GC SERVICES LIMITED PARTNERSHIP'S MOTION
FOR JUDGMENT ON THE PLEADINGS AND BRIEF IN SUPPORT**

Defendant, GC Services Limited Partnership ("GC Services" or "Defendant"), respectfully

moves for partial judgment on the pleadings and submits this Brief in Support thereof, pursuant to

Fed.R.Civ.P. 12(c).

Submitted by:

*/s/ Leah T. Rudnicki*
Margaret J. Meier
State Bar No.: 24104948
Leah T. Rudnicki
State Bar No. 24033387
**THE RUDNICKI FIRM**
6305 Waterford Blvd., Ste. 325
Oklahoma City, Oklahoma 73118
Telephone: (405) 445-7422
Facsimile: (405) 445-7421
Email: margie@rudnickifirm.com
Email: leah@rudnickifirm.com

**ATTORNEYS FOR DEFENDANT,
GC SERVICES LIMITED PARTNERSHIP**

## TABLE OF CONTENTS

I.      Introduction................................................................................................ 1

II.     Facts and Procedural History ..................................................................... 2

III.    Argument ................................................................................................... 3

        A.      Legal Standards................................................................................3

        B.      The Statutory Language of the FDCPA Dictates That the Conduct Alleged Here is Not a Violation of the FDCPA..................................................................4

                1. Defendant Did Not Engage in a Communication as it is Defined in the FDCPA ..................................................................................................................5

                2. Defendant's Contacts with its Vendors are not "in connection with the collection of a Debt."................................................................................................9

                3. The Supreme Court of the United States Implicitly Held that the Use of Letter Vendors is Not a Violation of the FDCPA"........................................................14

                4. Plaintiff's Interpretation of the FDCPA Does Not Advance the Plain Purpose of the Statute................................................................................................16

                5. The Colorado Supreme Court Held that Use of Mail vendors Do Not Violate FDCPA................................................................................................17

        C.      Principles of Agency Law Indicate Letter Vendors are Not a "Third Party" under the FDCPA................................................................................................19

        D.      Plaintiff's Reading of the FDCPA, if Enforced, Violates the First Amendment. ..22

                1. Interpreting the FDCPA to Prohibit the Use of Mail Vendors is a Content-Based Restriction on Protected Speech and is Subject to Strict Scrutiny........................22

                2. Plaintiff's Reading of the FDCPA Violates the First Amendment Under Intermediate Scrutiny................................................................................26

                3. This Court Should Follow the Canon of Constitutional Avoidance by Interpreting Section 1692c(b) in a way that Does Not Violate the Constitution.......................28

        E.      This Court Should Defer to the Interpretations of the Agencies Authorized to Regulate and Enforce the FDCPA. ....................................................................29

                1. The Consumer Financial Protection Bureau Has Performed Oversight on Debt Collectors and Has Not Found These Contacts in Violation with the Law. ..........29

2. The CFPB Explicitly Authorized the Use of LEtter Vendors in Finalizing Regulation F, 12 C.F.R. Part 1006...........................................................30

3. The Federal Trade Commission Similarly Has Not Found that the Use of Vendors Violates the FDCPA. ...........................................................32

4. This Court Should Employ Deference to the CFPB and FTC in Holding these Contacts to be Permissible. ...........................................................33

F.     Plaintiff's Interpretation of the FDCPA Would Have Disastrous Policy Implications ...........................................................................................................34

IV.    Conclusion ...........................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Acosta v. Campbell*,
309 F. App'x 315 (11th Cir. 2009) ...................................................... 8

*Alfaro-Huitron v. Cervantes Agribusiness*,
982 F.3d 1242 (10th Cir. 2020) ...................................................... 20

*Arkansas Writers' Project, Inc. v. Ragland*,
481 U.S. 221 (1987)...................................................... 25

*Arzlozynski v. Rubin & Debski, P.A.*,
710 F. Supp. 2d 1308 (M.D. Fla. 2010)...................................................... 21

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009)...................................................... 3, 4

*Baltimore & Ohio R.R. v. Baugh*,
149 U.S. 368 (1893)...................................................... 21

*Barbato v. Greystone All., LLC*,
916 F.3d 260 (3d Cir. 2019)...................................................... 20

*Barr v. American Association of Political Consultants*,
140 S. Ct.  (2020)...................................................... 23, 24, 25, 26

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................... 3

*Bob Jones Univ. v. United States*,
461 U.S. 574 (1983)...................................................... 16

*Bodur v. Palisades Collection, LLC,*
829 F. Supp. 2d 246 (S.D.N.Y. 2011) ........................................................ 22

*Bohringer v. Bayview Loan Servicing, LLC,*
141 F. Supp. 3d 1229 (S.D. Fla. 2015) ................................................ 12, 16

*Bolger v. Youngs Drug Prods. Corp.,*
463 U.S. 60 (1983) ....................................................................................... 24

*Caceres v. McCalla Raymer, LLC,*
755 F.3d 1299 (11th Cir. 2014) ............................................................ 28, 39

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,*
447 U.S. 557 (1980) ............................................................................ 23, 26, 27

*Chalkley v. Atlantic Coast Line R. Co.,*
150 Va. 301, 143 S. E. 631 (1928) .............................................................. 15

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
467 U.S. 837 (1984) ..................................................................................... 34

*Connecticut Nat. Bank v. Germain,*
503 U.S. 249 (1992) ....................................................................................... 6

*DeFazio v. Leading Edge Recovery Solutions, LLC,*
No. 2:10–cv–02945-WJM-MF, 2010 WL 5146765 (D.N.J. Dec. 13, 2010) ............... 22

*DelRio-Mocci v. Connolly Properties Inc.,*
672 F.3d 241 (3d Cir. 2012) .......................................................................... 5

*Dennis v. Niagara Credit Solutions, Inc.,*
946 F.3d 368 (7th Cir. 2019) ........................................................................ 3

*Dolan v. U.S. Postal Serv.,*
546 U.S. 481 (2006) ..................................................................................... 16

*Duke Energy Corp.,*
549 U.S. 561 (2007) ..................................................................................... 10

*Dunbar v. Kohn Law Firm,*
896 F.3d 762 (7th Cir. 2018) ......................................................................... 4

*Dunn v. Glob. Tr. Mgmt., LLC,*
506 F. Supp. 3d 1214 (M.D. Fla. 2020) ..................................................... 13

*Farquharson v. Citibank, N.A.,*
664 F. App'x 793 (11th Cir. 2016) ............................................................. 12

*Flood v. Mercantile Adjustment Bureau,*
176 P.3d 769 (Colo. 2008) .............................................................. 17, 18, 19

iii

*Fox v. Citicorp Credit Servs., Inc.*,
15 F.3d 1507 (9th Cir. 1994) ................................................................. 22

*Gomez v. Campbell-Ewald Co.*,
768 F.3d 871 (9th Cir. 2014) ................................................................. 20

*Gomez v. United States*,
490 U.S. 858 (1989) ............................................................................... 28

*Goodin v. Bank of Am., N.A.*,
114 F. Supp. 3d 1197 (M.D. Fla. 2015) ................................................. 13

*Goodson v. Bank of Am., N.A.*,
600 F. App'x 422 (6th Cir. 2015) ..................................................... 12, 40

*Grden v. Leikin Ingber & Winters PC*,
643 F.3d 169 (6th Cir. 2011) ................................................................. 13

*Gully v. Van Ru Credit Corp.*,
381 F. Supp. 2d 766 (N.D. Ill. 2005) ...................................................... 4

*Harrell v. Reynolds Metals Co.*,
495 So. 2d 1381 (Ala. 1986) .................................................................. 20

*Heinz v. Carrington Mortg. Servs., LLC*,
3 F.4th 1107 (8th Cir. 2021) .................................................................. 10

*Huebner v. Midland Credit Mgmt., Inc.*,
85 F. Supp. 3d 672 (E.D.N.Y. 2015) ...................................................... 39

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
No. 8:19-CV-983-T-60SPF, 2019 WL 5578878 (M.D. Fla. Oct. 29, 2019) ..... ..... 1, 15, 27, 32, 35, 37, 39, 40

*I.N.S. v. St. Cyr*,
533 U.S. 289 (2001) ............................................................................... 28

*Imbler v. Pachtman*,
424 U.S. 409 (1976) ............................................................................... 17

*In re FDCPA Mailing Vendor Cases*,
2021 WL 3160794 (E.D.N.Y. July 23, 2021) ................................... 38, 39

*Int'l Outdoor, Inc.* v. *City of Troy, Michigan*,
974 F.3d. 690 (6th Cir. 2020) ................................................................ 25

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
559 U.S. 573 (2010) ............................................................................... 38

iv

*Jones v. Federated Fin. Rsrv. Corp.*,
144 F.3d 961 (6th Cir. 1998) ................................................... 20

*Kinlock v. Wells Fargo Bank, N.A.*,
636 F. App'x 785 (11th Cir. 2016) ........................................... 12

*LeBlanc v. Unifund CCR Partners*,
601 F.3d 1185 (11th Cir. 2010) ............................................... 22

*Lodholtz v. York Risk Services Group Inc.*,
778 F.3d 635 (7th Cir. 2015) ..................................................... 3

*Mack v. Delta Air Lines, Inc.*,
639 Fed. Appx. 582 (CA11 2016) ............................................. 15

*Market Co. v. Hoffman*,
101 U.S. 112 (1879) ..................................................................... 5

*Martsolf v. JBC Legal Grp., P.C.*,
No. 1:04–CV–1346, 2008 WL 275719 (M.D. Pa. Jan. 30, 2008) ............................................. 22

*McCullen v. Coakley*,
573 U.S. 464 (2014) ................................................................... 24

*McIvor v. Credit Control Servs., Inc.*,
773 F.3d 909 (8th Cir. 2014) ................................................... 13

*Midland Funding, LLC v. Johnson*,
137 S. Ct. 1407, 197 L. Ed. 2d 790 (2017) ................................. 3

*National Institute of Family and Life Advocates v. Becerra*,
138 S. Ct. 2361, 201 L. Ed.2d 835 (2018) ............................... 23

*Nielsen v. Preap*,
139 S. Ct. 954 (2019) ................................................................... 5

*Ostrowe v. Lee*,
256 N. Y. 36, 175 N. E. 505 (1931) ......................................... 15

*Otto v. City of Boca Raton, Fla.*,
981 F.3d 854 (11th Cir. 2020) ................................................. 25

*Penn v. Cumberland*,
883 F. Supp. 2d 581 (E.D. Va. 2012) ....................................... 13

*Police Dept. of Chicago v. Mosley*,
408 U.S. 92, 92 S. Ct. 2286 (1972) ......................................... 23

*Pollice v. Nat'l Tax Funding, L.P.*,
225 F.3d 379 (3d Cir. 2000) ..................................................... 22

v

*Reed v. Town of* Gilbert, Ariz.,
576 U.S. 155 (2015) ........................................................................... 24

*Sable Communications of Cal. v. FCC*,
492 U.S. 115 (1989) ........................................................................... 25

*Sargeant v. Hall*,
951 F.3d 1280 (11th Cir. 2020) ........................................................ 10

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944) ........................................................................... 34

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) ........................................................................... 24

*Spiegel v. Kim*,
952 F.3d 844 (7th Cir. 2020) .............................................................. 3

*St. John v. Cach, LLC*,
822 F.3d 388 (7th Cir. 2016) .............................................................. 4

*Strand v. Diversified Collection Service, Inc.*,
380 F.3d 316 (8th Cir. 2004) ............................................................ 17

*Suquilanda v. Cohen & Slamowitz, LLP*,
No. 10 Civ. 5868 PKC, 2011 WL 4344044 (S.D.N.Y. Sept 8, 2011) ......................................... 22

*Thompson v. W. States Med. Ctr.*,
535 U.S. 357, (2002) ......................................................................... 26

*TransUnion, LLC. v. Ramirez*,
141 S. Ct. 2190 (2021) ........................................................... 1, 14, 15

*Turner v. Asset Acceptance, LLC*,
302 F. Supp. 2d 56 (E.D.N.Y. 2004) ............................................... 38

*UniStrip Techs., LLC v. LifeScan, Inc.*,
153 F. Supp. 3d 728 (E.D. Pa. 2015) ................................................. 4

*United States v. Campos–Serrano*,
404 U.S. 293 ....................................................................................... 5

*United States v. Canals–Jimenez*,
943 F.2d 1284 (11th Cir. 1991) ..................................................... 5, 6

*United States v. Mead Corp.*,
533 U.S. 218 (2001) ........................................................................... 34

*United States v. Schaltenbrand*,
930 F.2d 1554 (11th Cir. 1991) ........................................................ 20

vi

*United Statesnitedtates ex rel. Attorney General v. Delaware & Hudson Co.*,
213 U.S. 366 (1909) ................................................................................................ 28

*Virginia State Bd. of Pharmacy Bd. v. Virginia Citizens Consumer Council, Inc.*,
425 U.S. 748 (1976) ................................................................................................ 23

*Walters v. Metro. Educ. Enters., Inc.*,
519 U.S. 202 (1997) .................................................................................................. 6

*West v. Costen*,
558 F. Supp. 564 (W.D. Va. 1983) ......................................................................... 18

*White v. Goodman*,
200 F.3d 1016 (7th Cir. 2000) ................................................................................ 22

*Zortman v. J.C. Christensen & Assocs., Inc.*,
870 F. Supp. 2d 694 (D. Minn. 2012) ...................................................................... 9

## Statutes

12 U.S.C. § 5511(a) ................................................................................................ 29

15 U.S.C. § 1692 ................................................................................................... 1, 4

15 U.S.C. § 1692a ........................................................................................... 5, 7, 21

15 U.S.C. § 1692b .............................................................................................. 7, 10

15 U.S.C. § 1692c ................................................................................... 3, 4, 5, 9, 10

§ 1692f(7) .......................................................................................................... 7, 10

15 U.S.C. § 1692k(a)(1), (2)(A) .............................................................................. 38

47 U.S.C. § 227 ....................................................................................................... 24

50 U.S.C. § 3931 ....................................................................................................... 8

Cal. Civ. Code § 1788.12(e) .................................................................................... 29

Fla. Stat. § 559.72(5) ............................................................................................... 29

Iowa Code § 537.7103(3)(a)(2) ............................................................................... 29

Md. Code, Commercial Law, § 14-202 .................................................................... 29

U.S. Const., amend. I .............................................................................................. 23

Wis. Stat. § 427.104(1)(e) ....................................................................................... 29

## Rules

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 3

Fed.R.Civ.P. 12(c) ................................................................................................ 1, 3

**Regulations**

12 C.F.R. Part 1006............................................................................................... i, 30

12 C.F.R. § 1006.34(c)(4)(iii) ................................................................................. 31

12 C.F.R. §§ 1016.10, 1016.13 ............................................................................... 27

45 C.F.R. § 164.502 ................................................................................................ 37

45 C.F.R. § 164.506 ................................................................................................ 27

Debt Collection Practices (Regulation F),
84 FR 23274.......................................................................................................... 35

Debt Collection Practices (Regulation F),
85 FR 76734-01 (Nov. 30, 2020)........................................................................... 32

Debt Collection Practices (Regulation F),
86 FR 5766 (January 19, 2021) ......................................................................... 31, 32

Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection
Practices Act, 53 FR 50097-02, 1988 WL 269068 (F.R. 1988................................. 9, 33

**Other Authorities**

2021 Nacha Operating Guidelines ........................................................................... 36

2A C.J.S. Agency § 1 .............................................................................................. 20

CFPB Compliance Bulletin and Policy Guide; 2016-02, available at
https://files.consumerfinance.gov/f/documents/102016_cfpb_OfficialGuidanceServiceProvider
Bulletin.pdf (last downloaded August 18, 2021). ................................................... 30

CFPB Supervision and Exam Manual at 299 (Sept. 2020), available at
https://files.consumerfinance.gov/f/documents/cfpb_supervision-and-examination-manual.pdf
............................................................................................................................ 30

Fed. Reserve Bank of N.Y., Staff Report No. 814 (May 2017).................................. 37

FTC Opinion, LeFevre to Zbrzeznj (Sept. 21, 1992)................................................ 33

Fletcher, Cyclopedia of the Law of Private Corporations § 30 (Sept. 2020)................ 21

Restatement (Second) of Agency § 1(1) ................................................................. 20

Restatement (Third) of Agency 1.01 ...................................................................... 21

Restatement of Torts §559 ..................................................................................... 15

Sen. Rep. No. 95-382, Cong. Record, Vol. 123 (1977).................................................................. 16

**DEFENDANT GC SERVICES LIMITED PARTNERSHIP'S BRIEF IN
SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Defendant, GC Services Limited Partnership ("Defendant"), by and through its undersigned counsel, submits this Brief in Support of its Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c). For all of the reasons expressed below, this Court should grant Defendant's Motion for Partial Judgment on the Pleadings and reject Plaintiff Gregory L. Dashiell's ("Plaintiff") claims under 15 U.S.C. § 1692c(b) of the Fair Debt Collection Practices Act, ("FDCPA").

## I.    INTRODUCTION

Plaintiff's Complaint asks this Court to ignore both the plain language and explicit purpose of the FDCPA and instead find liability against Defendant for the innocuous use of a letter vendor for the purpose of facilitating communications between Defendant and Plaintiff. A review of the language and purpose of the FDCPA reveals that the type of conduct complained of – namely the innocuous use of a letter vendor for the sole purpose of facilitating the sending of letters from Defendant to Plaintiff – is not a "communication" or "in connection with the collection of a debt" as those terms as contemplated by the statute. This is clearly indicated by the United States Supreme Court in the recent case of *TransUnion, LLC. v. Ramirez*, 141 S. Ct. 2190 (2021). Moreover, there is nothing abusive – either explicitly or implicitly – about Defendant's practice of using a letter vendor. The purpose of the FDCPA is simply not advanced, and is in fact diminished, by the interpretation of the statute that Plaintiff puts forth. Similarly, agency principles dictate that the conduct of Defendant is not violative and is instead merely **Defendant using its own agent to help facilitate communication to Plaintiff**.

1

Constitutional concerns also dictate that Plaintiff's claim under Section 1692c(b) must be dismissed. Plaintiff's position, if accepted, violates the First Amendment as an unconstitutional content-based restriction on protected speech.

Recognizing that the use of letter vendors is appropriate, the federal agencies tasked with regulating the debt collection industry have taken no issue – and instead explicitly encourage – the use of letter vendors. Here too, this Honorable Court should reject Plaintiff's attempt to manufacture liability and hold that the use of letter vendors is not violative of the FDCPA. As such, Defendant respectfully requests that its Motion for Partial Judgment on the Pleadings be granted, and Plaintiff's claim under 15 U.S.C. § 1692c(b) of the Fair Debt Collection Practices Act be dismissed, with prejudice.

## II.  **FACTS AND PROCEDURAL HISTORY**

Plaintiff filed his Complaint on September 28, 2021. (Doc. 1). Among other allegations, Plaintiff generally asserts that Defendant violated Section 1692c(b) of the FDCPA because "Defendant mailed Plaintiff a letter in an attempt to collect the subject debt ('Defendant's Letter')," which was "prepared and issued by a third-party vendor…" and "by hiring a third-party vendor to issue Defendant's Letter, Defendant unlawfully disclosed to the third-party that Plaintiff allegedly owed the subject debt." (Doc. 1 at 2-4, ¶¶ 19, 29, and 33). Plaintiff alleges that Defendant thus violated 15 U.S.C. § 1692c(b), which prohibits a debt collector from communicating, in connection with the collection of a debt, with anyone other than the debtor. (Doc. 1 at 4-7, ¶¶ 38-43, 53-57).

Defendant filed its Answer on November 11, 2021. (Doc. 12). Defendant now files the instant Motion for Partial Judgment on the Pleadings, respectfully asking for dismissal of Plaintiff's claim under 15 U.S.C. § 1692c(b) of the Fair Debt Collection Practices Act, with prejudice.

2

III.   **ARGUMENT**

A.   **Legal Standards**

Motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) share the same standard of review as motions to dismiss under Fed. R. Civ. P. 12(b)(6). *Lodholtz v. York Risk Services Group Inc.,* 778 F.3d 635, 639 (7th Cir. 2015).   Under Fed. R. Civ. P. 12(b)(6), "to survive a motion to dismiss . . . a complaint must 'state a claim to relief that is plausible on its face.'" *Id.* (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).   Further:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009). Although we draw all reasonable inferences and facts in favor of the nonmovant, we need not accept as true any legal assertions.

*Id.  See also Spiegel v. Kim,* 952 F.3d 844 (7th Cir. 2020), *cert. denied sub nom. Spiegal v. Kim,* 141 S. Ct. 369 (2020) (affirming judgment on the pleadings on a claim for violation of the FDCPA.[1])  The standard under Fed. R. Civ. P. 12(b)(6) "establishes that 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice[.]'" *UniStrip Techs., LLC v. LifeScan, Inc.*, 153 F. Supp. 3d 728, 735 (E.D. Pa. 2015) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).

---

[1] For other cases in the United States Supreme Court and the Fifth Circuit affirming judgments on the pleadings or granting judgment on the pleadings on claims for violation of the FDCPA *see Midland Funding, LLC v. Johnson,* 137 S. Ct. 1407, 197 L. Ed. 2d 790 (2017); *Castro v. Collecto, Inc.,* 634 F.3d 779, 782 (5th Cir. 2011); *Drennan v. First Resol. Inv. Corp.,* 389 F. App'x 352 (5th Cir. 2010); *Morris v. Conn Credit Co.,* No. CV H-13-195, 2013 WL 12157174, at *1 (S.D. Tex. Nov. 20, 2013).

**B.      The Statutory Language of the FDCPA Dictates That the Conduct Alleged Here is Not a Violation of the FDCPA**

Plaintiff's Complaint baldly alleges that Defendant violated § 1692c(b) of the FDCPA. Plaintiff's position is erroneous.

Section 1692c(b), which is designated with the subheading, "Communications with Third Parties," provides that without the prior consent of the consumer or if another statutory exception applies:

> [A] debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b).

Plaintiff would have this Court believe that this Section prohibits *de minimis* contacts between Defendant and one of its vendors for the sole purpose of facilitating a letter sent to Plaintiff.  This interpretation, of course, is at direct odds with the purpose and design of the FDCPA, which generally seeks to curb **abusive debt collection practices**.  S*ee* 15 U.S.C. §1692(a).  The conduct complained of here could never reasonably be described as abusive. Indeed, a review of the statute as a whole – along with case law interpreting the same – renders only one possible conclusion:  Defendant's actions did not violate the FDPCA.

**1.  Defendant Did Not Engage in a Communication as it is defined in the FDCPA.**

Plaintiff's allegations ignore that Defendant did not engage in a "Communication," as it is defined in the FDCPA.  § 1692c(b) is titled "**Communication** with Third Parties," and forbids that a debt collector "**communicate**…with any person other than the consumer…." 15 U.S.C. § 1692c(b) (emphasis added).  Therefore, Plaintiff must allege that Defendant engaged in a

4

"communication" as defined.  The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).  Not every transmission of information about a debt falls within the ambit of the definition of "communication."

A plain reading of Congress's definition of "communication" shows that the terms "person" and "medium" are mutually exclusive.  Read together, a "Person" could not include a "medium" or the phrase "through any medium" would be surplusage.  *See United States v. Canals–Jimenez,* 943 F.2d 1284, 1287 (11th Cir. 1991) ("A basic premise of statutory construction is that a statute is to be interpreted so that no words shall be discarded as being meaningless, redundant or mere surplusage."); *DelRio-Mocci v. Connolly Properties Inc*., 672 F.3d 241, 249 (3d Cir. 2012) ("It is a well-known canon of statutory construction that courts should construe statutory language to avoid interpretations that would render any phrase superfluous.")(internal citation omitted).

Furthermore, the Supreme Court of the United States has stated that a "statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."  *United States v. Campos–Serrano,* 404 U.S. 293, 301 n. 14 (1971) (quoting *Market Co. v. Hoffman,* 101 U.S. 112, 115–16 (1879)).  This canon reflects the idea that every word is to be given effect and none "should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence."  *Nielsen v. Preap*, 139 S. Ct. 954, 969 (2019).  The Court "must presume a legislature says in a statute what it means and what it says[.]"  *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

With this canon in mind, the definition contemplates two recipients of conveyances like the ones in this action – those *to* whom conveyances are made and those *through* whom conveyances are made.  The phrase "to any person" refers to the target at which the conveyance is

directed *i.e.* the object of the conveyance.  The phrase "through any medium" refers to the person or thing which carries the conveyance.  Both the person and the medium receive and possess the information conveyed.  The latter (the medium) dispatches the information to the former (the person), so the word "person" here must not include "mediums."  The prohibition in § 1692c(b) refers to communications with "any person," or "third parties," as the section heading indicates.  Importantly, none of the permissible exceptions under § 1692c(b) involve "mediums," but refer to specific third parties, persons, or targets of the information *i.e.* the consumer, his attorney, a consumer reporting agency, creditor, etc.

By contrast, letter vendors are not third parties in this context, nor are they persons, but a medium by which communications with consumers are effectuated.  Absent contrary contextual indicators, undefined words in a statute are given their ordinary meaning. *Walters v. Metro. Educ. Enters., Inc.,* 519 U.S. 202, 207 (1997) (internal citation omitted).  Webster's defines "medium" to mean "a person *through* whom a purpose is accomplished." Webster's Third International Dictionary at 1403 (1961) (emphasis added).  A second definition includes, "something through or by which something is accomplished, conveyed, or carried on." *Id.* at 1402.  The language of § 1692c(b) is *not* that "a debt collector may not communicate . . .with any person through any medium . . . ."  Mediums are excluded from the prohibition—and under § 1692c(b), a debt collector may employ the use of any medium to communicate with a consumer.

The text of the FDCPA contemplates that both people and things would serve as mediums, such as when an individual serves legal process, § 1692a(6)(D), when a debt collector uses a telephone, § 1692a(7), § 1692d(5), § 1692d(6), § 1692f(5), or when a collector sends a telegram, § 1692b(5), § 1692f(5), § 1692f(8).  By authorizing the service of process, phone calls, and telegrams, the text of the statute contemplates that certain conveyances of debt-related information

6

will be sent through and by mediums.  Each of these mediums serve the same purpose as a letter vendor, supporting that Congress clearly intended that such disclosures would be permissible under the law.

Telegrams are specifically contemplated in the FDCPA. *See* § 1692b(5), § 1692f(5), § 1692f(8).  The information a collector transmits to a telegraph vendor include data about the consumer and the debt that is owed, the same kind of information electronically transmitted by a debt collector to its mail vendor.  Furthermore, the FDCPA imposes three restrictions on the use of telegrams including (1) When seeking location information about a consumer, using "any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt"; (2) "Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees"; and (3) "Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business." 15 U.S.C. §§ 1692b(5), 1692f(5), 1692f(8)

The surplusage canon requires recognition that the use of telegrams to collect debts, within the three constraints noted above, must be permitted; otherwise, these restrictions would be mere surplusage without any real meaning or impact.  Application of this canon necessitates the conclusion that Congress allowed debt collectors to communicate with consumers via telegram, even though it would not be possible to do so without conveying the contents of the communication to the telegram vendor, *e.g.* Western Union.  Print and mail vendors are modern day telegram

messengers. They are not unauthorized third parties; rather, they are the carriers of the vital communications.

Plaintiff's interpretation would also prevent attorneys from carrying on collection legislation due to the numerous court-adjacent communications they must make. To file and prosecute a lawsuit, attorneys must disclose consumer and debt-related information to numerous court-adjacent parties, including process servers, clerks of court, court reporters, etc. The collection attorney must disclose the consumer's name and other identifying information to the Department of Defense to determine if the consumer is on active-duty status pursuant to the Servicemembers' Civil Relief Act, 50 U.S.C. § 3931. If the Court aligns with Plaintiff's interpretation, and the FDCPA permits contacts only to an exhaustive list of entities that are permissible third parties, then collection ligation would not exist. Section1692c(b) includes no exception for communicating information to a court clerk when a lawsuit is filed, nor does it expressly permit the disclosure of information to a jury or to the Department of Defense, nor to vendors tasked with confirming a consumer's residence for venue determination. But these exceptions must exist, because the FDCPA both expressly permits debt collection litigation and clearly contemplates disclosure of debt collection-related information to third parties not explicitly identified in §1692c(b). *See e.g., Acosta v. Campbell*, 309 F. App'x 315, 320 (11th Cir. 2009) (holding that "a communication made by a party in a foreclosure action or its counsel regarding the foreclosure action is not a 'communication' under 15 U.S.C. § 1692c(b).")

The Federal Trade Commission ("FTC"), which is tasked with initiating and cataloguing enforcement actions for violations of the FDCPA, also has found that such conveyances do not violate the law. Recognizing a debt collector's need to convey debt-related information through mediums such as telephone operators and telegraph clerks without violating § 1692c(b), the FTC

issued staff commentary confirming that conveyances incident to the use of those mediums do not violate § 1692c(b). Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 FR 50097-02, 1988 WL 269068 (F.R. 1988).  The FTC also comments that incidental disclosures of information about a debt do not violate the prohibition against third-party disclosure such as "when an eavesdropper overhears a conversation with the consumer[.]" *Id.* at 50104.  The FTC further noted that a legal collector could "use a computer service to send letters on [its] own behalf" and that it was "permissible to send a letter generated by a machine, such as a computer or other printing device. *Id.* at 50105-06.  As discussed above, the FTC considered debt collectors leaving messages with telephone operators permissible under the Act. *Zortman v. J.C. Christensen & Assocs., Inc.*, 870 F. Supp. 2d 694, 701-02 (D. Minn. 2012) (citing Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 FR 50097–02, § 805(b)(3) (1988)).  Read altogether, Defendant's incidental contacts with third party mail vendors are not "communications" as defined in the FDCPA, and do not violate §1692c(b).

### 2.  Defendant's Contacts with its Vendors are not "in connection with the collection of a Debt."

For a contact to be actionable under § 1692c(b), the debt collector must communicate with an individual, "in connection with the collection of any debt*.*" 15 U.S.C. § 1692c(b).  Congress intended a distinction between communications and communications in connection with the collection of a debt.  Therefore, it must be determined whether the act of transmitting information about the debt, and about Plaintiff, to the vendor was a communication in connection with the collection of a debt.  *See Heinz v. Carrington Mortg. Servs., LLC*, 3 F.4th 1107, 1112 (8th Cir. 2021) (stating that "the dispositive issue in this case is whether the challenged communications and conduct were made in connection with the collection of a debt . . . ").

The text of the FDCPA mandates that the phrase "in connection with collection of any debt" has a special meaning.  The word "communicate" is used as a verb in Sections 1692b, 1692c, 1692e, and 1692f of the FDCPA.  In two of those instances, it is followed by the words "in connection with the collection of any debt;" § 1692c(a), (b); in one instance it is followed by the words "with respect to such debt" §  1692c(c); in one instance it is followed by the words "regarding a debt"; § 1692f(7); and in the remaining instances it is not tied to either of those phrases. § 1692b(3), (6), (7)), § 1692e(8).

> Although the "normal rule of statutory construction [is] that words repeated in different parts of the same statute generally have the same meaning," that default principle does not govern where—as here—the repeated word is modified in one instance but not the other.

*Sargeant v. Hall*, 951 F.3d 1280, 1283 (11th Cir. 2020) (internal citations omitted); *see also*, *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007) ("[T]he natural presumption that identical words used in different parts of the same act are intended to have the same meaning . . . is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent.") (citation and internal quotation marks omitted.)

One of the two instances in which the FDCPA links the verb "communicate" to the phrase "the collection of any debt" is in the section at issue in the present case.  Applying the rule stated above, Defendant was prohibited from communicating with third parties "in connection with the collection of any debt", but it was not prohibited from communicating "with respect to" or "regarding" the debt, and it was not prohibited from "communicating" with third parties.  For these distinctions to have meaning (as they must) there must be a statutory distinction that separates the meaning of these paragraphs.

10

These distinctions require recognition that communicating "regarding a debt" is different than communicating "in connection with the collection of" a debt. This distinction is crucial in evaluating the FDCPA in a world of modernized communications. Text messages may be directed to consumers, but they reside on the servers of phone carriers. Email messages to consumers similarly reside on the servers of email providers. Information is conveyed to those third parties, but not "in connection with" any collection effort by those entities. The same is true of mail carriers and "cloud" storage vendors that handle data storage for debt collectors. And the same is true for letter vendors.

Plaintiff consolidates two communications into one: 1) Defendant's transmission of information to the letter vendor for purposes of generating a letter to the consumer; and 2) the actual letter which was allegedly transmitted by the letter vendor to Plaintiff. It is the second communication, the actual letter that had the objective of motivating Plaintiff to pay the debt, which would render the communication to be "in connection with the collection" of a debt. That communication is not alleged to have violated the FDCPA. The first communication, however, from Defendant to the letter vendor is not a "communication in connection with the collection of a debt." The fact that the letter vendor would generate and send on behalf of Defendant would be considered a "communication in connection with the collection of a debt," does not make the transfer of information to the letter vendor the same. When a debt collector transmits data to its letter vendor, it is merely transmitting the information that is necessary to enable it to transmit the message to the consumer. It does not hold the consumer up to shaming or public embarrassment and even if the vendor is a third party within the meaning of the FDCPA, it does not communicate with a third party "in connection with the collection of any debt."

Courts across the country employ various tests to determine whether a communication is one that is in connection with the collection of a debt, none of which would hold that the contacts here are actionable under the FDCPA.  When determining whether a communication was made in connection with the collection of a debt, the courts look to the language of the communication itself to ascertain whether it contains a demand for payment and warns of additional fees or actions if payment is not tendered.  *Farquharson v. Citibank, N.A.,* 664 F. App'x 793, 801 (11th Cir. 2016). Consequently, when determining whether the transmission of information to a third party constitutes a violation of the FDCPA, it is important to consider whether the communication makes an express or implied demand for payment.  *Kinlock v. Wells Fargo Bank, N.A.,* 636 F. App'x 785, 787 (11th Cir. 2016) (affirming dismissal of FDCPA claim because the complaint failed to allege that the communication made a demand for payment).

Other courts have developed a factor-based analysis that takes into account: "(1) the nature of the relationship of the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether it was sent in response to an inquiry or request by the debtor; (4) whether the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6) whether it stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay."  *Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 431 (6th Cir. 2015); *Bohringer v. Bayview Loan Servicing, LLC*, 141 F. Supp. 3d 1229, 1240-1241 (S.D. Fla. 2015).

Here, the communications to the letter vendor made no demand for payment, and a de minimis contact with a letter vendor acting as a medium to contact Plaintiff is not part of a broad strategy to coerce payment, but rather is just standard debt collection activity.  The relationship between the parties to the specific communication in question is not between the Defendant and

the Plaintiff, but between the Defendant and its agent, with the Plaintiff as essentially a third-party beneficiary.  The communication does not: (1) make a direct or implied demand for payment from the recipient letter vendor; (2) state that it is an attempt to collect a debt; or (3) suggest consequences if payment is not made.  Plaintiff instead conflates Defendant's communications to *facilitate* the collection of the outstanding debts with communication demanding payment.  Section 1692c(b) punishes only the latter, which does not include communications to a third-party letter vendor.  *Dunn v. Glob. Tr. Mgmt., LLC*, 506 F. Supp. 3d 1214, 1241 (M.D. Fla. 2020).

Other courts apply the "animating purpose" test to determine whether a communication is in connection with the collection of a debt.  This test evaluates whether an animating purpose of the communication must be to induce payment by the debtor.  *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (holding balance statements from a debt collector in response to a debtor inquiry are not made in connection with the collection of a debt despite stating a balance was "due."); *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014) (holding the animating purpose of a communication with the credit reporting agency is not to induce payment); *Goodin v. Bank of Am., N.A.*, 114 F. Supp. 3d 1197, 1205 (M.D. Fla. 2015) (holding various informational communications between a debtor and a consumer were not FDCPA violations); *Penn v. Cumberland*, 883 F. Supp. 2d 581, 587–88 (E.D. Va. 2012) ("In determining whether a communication is intended to collect a payment, it is appropriate to consider the nature of the parties' relationship, as well as the purpose and context of the communication and whether an "animating purpose" of the communication is to induce payment.").

Here, the communication at issue, namely, the transfer of data from Defendant to the letter vendor, does not have the animating purpose of inducing payment by the debtor.  Although it facilitates the collection or validation of a debt for the benefit of all parties, ultimately the

conveyance of the necessary information to facilitate sending a collection letter is not going to provide any pressure or strategy to induce payment.  Thus, Defendant's conduct does not violate § 1692c(b) under the numerous tests set out by the federal courts.

### 3. The Supreme Court of the United States Implicitly Held that the Use of Letter Vendors is Not a Violation of the FDCPA

The Supreme Court recently implicitly weighed in on the dispositive issue in this matter, and seemingly held that communications to vendors were not injuries sufficient to confer standing in *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190 (2021). In *Ramirez*, the plaintiff brought a class action on behalf of himself and a class of similarly situated individuals for violations of the Fair Credit Reporting Act ("FCRA").  Plaintiff and a certified class of 8,185 class members asserted that they had been injured by Defendant's use of a third-party software which would match names to the Treasury Department's Office of Foreign Assets Control ("OFAC") list of terrorists, drug traffickers, and other serious criminals.  *Ramirez,* 141 S.Ct at 2201.  When a third-party business would obtain an individual credit file, the file would flag the consumer as a potential match for someone on the list, comparing first and last names only.  *Id.*  Plaintiff alleged that the use of the software by the Defendant was not a reasonable procedure under the FCRA.  *Id.* at 2202.  Plaintiff further alleged additional formatting errors when he requested his credit file from the Defendant. *Id.*

The Supreme Court reversed the Ninth Circuit and dismissed most of the claims involved on standing grounds.  However, Justice Kavanaugh wrote in a footnote, addressing one of the arguments the plaintiffs had raised in its final brief, regarding disclosures to vendors.  The Court determined that the issue was raised too late to be considered, but still went on to discuss this theory.

> For the first time in this Court, the plaintiffs also argue that TransUnion 'published' the class members' information internally—for example, to employees within TransUnion and **to the vendors that printed and sent the mailings that the class members received**.[…]   Many American courts did not traditionally recognize intra-company disclosures as actionable publications for purposes of the tort of defamation.   *See, e.g.*, *Chalkley v. Atlantic Coast Line R. Co*., 150 Va. 301, 326–328, 143 S. E. 631, 638–639 (1928). **Nor have they necessarily recognized disclosures to printing vendors as actionable publications**. *See, e.g.*, *Mack v. Delta Air Lines, Inc.*, 639 Fed. Appx. 582, 586 (CA11 2016).   Moreover, even the plaintiffs' cited cases require evidence that the defendant actually "brought an idea to the perception of another," Restatement of Torts §559, Comment a, p. 140 (1938), and thus generally require evidence that the document was actually read and not merely processed, *cf. Ostrowe v. Lee*, 256 N. Y. 36, 38–39, 175 N. E. 505, 505–506 (1931) (Cardozo, C. J.).

*Id.* at 2210, n. 6 (2021) (emphasis added).

In this footnote, the Court specifically went out of its way to acknowledge that disclosures to printing vendors are not actionable publications.  Although the Court's main basis for dismissing many of the plaintiffs' claims was on standing grounds, the Court clearly suggested that lawsuits under Plaintiff's vendor theory here could not survive on the merits either.  With the Eleventh Circuit recently vacating its opinion in *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,[2] the Supreme Court's opinion in *Ramirez* is the only appellate case law on this issue.

### 4.  Plaintiff's Interpretation of the FDCPA Does Not Advance the Plain Purpose of the Statute

This Court should also dismiss Plaintiff's claims because advancing such an argument does not promote the purposes of the FDCPA.  While Plaintiff provides little factual legal support in his Complaint, a generous reading of the Complaint lends to the conclusion that Plaintiff's position

---

[2] In its original opinion in *Hunstein,* the Eleventh Circuit reversed a District Court's dismissal of a plaintiff's letter vendor action. 994 F.3d 1341, 1352 (11th Cir. 2021). In reaching its decision, the Court did not consider the question as to whether the use of a letter vendor was a "communication" under the statute, misapplied many statutory canons, and ignored Eleventh Circuit precedent. *Id.*

15

is that the only permissible third-party communications are to the explicitly named entities in the statute, *i.e.* the consumer, his or her attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.  Thus, taking Plaintiff's position as true, the transmission of data to the mail vendor would violate the FDCPA because a third-party vendor for a debt collector is not one of the permissible exceptions.  Interpreting the FDCPA in this way creates catastrophic results without advancing much of the purposes of the statute.

The Supreme Court has said that courts should go beyond literal language of a statute if reliance on that language would defeat the plain purpose of a statute. *Bob Jones Univ. v. United States*, 461 U.S. 574, 586 (1983).  The proper interpretation of "communication," "in connection with the collection of a debt" and "third party" "depends upon reading the whole statutory text, considering the purpose and context of the statute and consulting any precedents or authorities that inform the analysis." *See Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006).  The purpose of the FDCPA's restrictions on third party communications was to prohibit "disclosing [of] a consumer's personal affairs to friends, neighbors, or an employer."  Sen. Rep. No. 95-382, Cong. Record, Vol. 123, at p. 1696 (1977).  These contacts with third parties, all of whom know the consumer, were deemed "not legitimate collection practices and result in serious invasions of privacy, as well as the loss of jobs." *Id.* at 1699.  Although the FDCPA restricts communications with third parties regarding a debt, the bar should not be so absolute.

Reading the FDCPA to include letter vendors does not advance the purposes of the statute.  When a debt collector transmits data to its letter vendor, it is merely transmitting the information that is necessary to enable it to transmit the message to the consumer.  It does not hold the consumer up to shaming or public embarrassment or otherwise puts their employment in jeopardy because a

16

specialized company prints and mails information concerning their debts.  Instead, it creates a scenario where a Plaintiff can reap the rewards for transmission of information neither they, nor anyone related to them, would ever know about.  The FDCPA should not be interpreted "to create bizarre results likely beyond the scope of Congress's intent in enacting the statute." *Strand v. Diversified Collection Service, Inc.,* 380 F.3d 316, 318 (8th Cir. 2004).  Plaintiff's argument, if successful, would prevent these vital, but de minimis, communications while not doing much for the sake of advancing these policies.  Congress legislates against the backdrop of common law to avoid absurd results, which must give way to statutory constructions in harmony with general principles of tort immunities and defenses existing when Congress enacts a statute.  *See Imbler v. Pachtman*, 424 U.S. 409, 418 (1976).  Congress would not have written a statute that would permit such "bizarre" and "absurd" results.  In this context. Defendant's contacts with its mail vendor do not violate the FDCPA.

### 5. The Colorado Supreme Court Held that Use of Mail Vendors Do Not Violate FDCPA

*Ramirez* was not the first appellate court to weigh in on the legitimacy of claims of illegal third-party disclosures to letter vendors.  In *Flood v. Mercantile Adjustment Bureau*, 176 P.3d 769 (Colo. 2008), the Colorado Supreme Court, sitting en banc, was presented with an identical claim that the use of an automated mailing service violated the Colorado state equivalent of § 1692c(b).  The plaintiff alleged that the debt collector violated § 12-14-105(2) of Colorado's Fair Debt Collection Practices Act, "which prohibits communications between a debt collector and third parties." *Id.* at 777.  The court concluded that Colorado's General Assembly did not intend for § 12-14-105(2) to "prohibit a debt collector from using an automated mailing service." *Id.*  The court analyzed 1692c(b) of the FDCPA, which was "nearly identical" and noted the purpose of 1692c(b), which is to "protect a consumer's reputation and privacy, as well as to prevent loss of jobs resulting

17

from a debt collector's communication with a consumer's employer concerning the collection of a debt.'" *Id.* (*citing West v. Costen*, 558 F. Supp. 564, 575 (W.D. Va. 1983). The court found that the debt collector "utilized an entirely automated printing and mailing service" and "electronically transmitted the information included in its collection communications to Unimail." *Flood*, 176 P.3d, at 777. "Unimail then printed the collection communications, which were mechanically stuffed into envelopes." *Id.*

The court agreed with the determination of the lower court that the "use of such a highly automated procedure did not violate § 12-14-105(2) because it did not threaten the consumer with the risk of being coerced or embarrassed into paying a debt because the debt collector contacted an employer, family member, friend, or other third party." *Id.* The court found that the debt collector did not engage in a prohibited third-party communication because "[t]he use of an automated mailing service, such as Unimail, by a debt collector is a *de minimis* communication with a third party that cannot reasonably be perceived as a threat to the consumer's privacy or reputation." *Id.* The Colorado Attorney General explained that collection agencies "may hire computer programmers, data entry staff, receptionists, bookkeepers and janitors" and while communications "with these individuals may be in connection with the collection of debts by facilitating that process…it would be absurd to suggest that such communications are prohibited." Brief for Colorado Attorney General, as Amicus Curiae Supporting Respondent in *Flood v. Mercantile Adjustment Bureau*, No. 06SC699, 2007 WL 2322277, at *13 (Colo. 2007) (Appellate Brief). Whether an agency uses "its own in-house 'W-2' employees rather than… independent contractors" should not impact the analysis, the Attorney General argued, because if "a collection agency 'engages' or contracts with the third-parties to perform the same activities, no impermissible third-party communication results." *Id.* at *13-14. "The contractor is merely an

18

agent 'standing in the shoes' of the collection agency or debt collector." *Id.* at *14.  The Attorney General posited that the use of a "fully-automated printing and mailing system…does not contain the same risk of embarrassment or invasion of privacy inherent in contact with a consumer's relatives, neighbors, or employer. *Id.*

Here, this Court should follow guiding jurisprudence, including that of the Supreme Court of the United States, as well as consider the language of § 1692c(b), to dismiss Plaintiff's mistaken claims that conveyances of information to a letter vendor violate the FDCPA.

### C.   Principles of Agency Law Indicate Letter Vendors are Not a "Third Party" under the FDCPA

Section 1692c(b) prohibits unauthorized communications with "third parties."  Therefore, in order for Defendant to have violated the FDCPA by communicating with a letter vendor, that vendor would have to be a "third party."  However, the letter vendors used here are not third parties, but rather agents of Defendant, so communications to letter vendors are not violations of the FDCPA.

The prohibition to third parties discusses communications with "any person."  But any person does not mean literally "any person," and not every person that is excluded from the statute is a third party.  For example, an administrative assistant at a debt collection firm is no more a third party than a letter vendor working in conjunction with the debt collector, because as is plainly apparent, letter vendors are agents of the business that utilize them, like Defendant.  Thus, contacts with its letter vendor do not violate the FDCPA's prohibition on communications with third parties, as such communications are not to another person, but to agents of the debt collector.

Federal courts have long relied on traditional agency principles to interpret the FDCPA. *Barbato v. Greystone All., LLC*, 916 F.3d 260, 269 (3d Cir. 2019), *cert. denied sub nom. Crown Asset Mgmt. LLC v. Barbato*, 140 S. Ct. 245 (2019), as well as statutes like the Telephone

Consumer Protection Act, *see*, *e.g.*, *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd*, 577 U.S. 153 (2016), and the Fair Credit Reporting Act, *see, e.g.*, *Jones v. Federated Fin. Rsrv. Corp.*, 144 F.3d 961, 966 (6th Cir. 1998).

"Agency is defined as 'the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so act.'" *United States v. Schaltenbrand*, 930 F.2d 1554, 1560 (11th Cir. 1991) (*quoting* Restatement (Second) of Agency § 1(1)). The principal of an agent, after all, is subject to the same principles of respondeat superior as is the employer of an employee—because of that fiduciary relationship. *Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1254 (10th Cir. 2020) (finding respondeat superior derives from a principal's right to control the conduct of its agents.).

A principal's agent or employee, who acts for or on behalf of the principal, is a "party" to that principal's contractual and business relations and not a third party thereto. And under longstanding background principles of agency law, "a principal is considered to have done himself or herself what he or she does by acting through another person." 2A C.J.S. Agency § 1. In other words, "a principal's agent or employee, who acts for or on behalf of the principal, is a 'party' to that principal's contractual and business relations and not a third party thereto." *Harrell v. Reynolds Metals Co.,* 495 So. 2d 1381, 1388 (Ala. 1986). An agency relationship "always 'contemplates three parties—the principal, the agent, and the third party with whom the agent is to deal.'" Restatement (Third) of Agency 1.01 cmt. C (2006). In this case, we have a debt collector (the principal), the agent (the letter vendor), and the third party with whom the agent is to deal (the consumer). The debt collector contracts with these third-party vendors who exist solely to assist the principal debt collector in carrying out their operations. The FDCPA does not contain any

indication that Congress intended to abrogate these fundamental agency-law principles in enacting 1692c(b).  Read in the way Plaintiff proposes, each individual debt collector would have to build a wall around each consumer's data to preclude any employee, partner, or agent from accessing it or face legal consequences.

Congress made it clear that debt collectors could be corporations. *See*, *e.g.*, 15 U.S.C. § 1692a(6)(B) (exclusion for entities "related by common ownership or affiliated by corporate control").  And because corporations are not natural persons, they necessarily act by and through agents. *Baltimore & Ohio R.R. v. Baugh*, 149 U.S. 368, 382 (1893); *accord* William Meade Fletcher, Cyclopedia of the Law of Private Corporations § 30 (Sept. 2020); *see Arzlozynski v. Rubin & Debski, P.A.,* 710 F. Supp. 2d 1308, 1310-1311 (M.D. Fla. 2010) (holding directors and officers of a debt collection firm is a "debt collector" under the FDCPA).  There is no reason to think Congress meant to sweep debt collectors' agents into § 1692c(b)'s prohibition on certain communications.

Absent a clear expression of intent to the contrary, one must presume that Congress intended debt collectors to conduct debt-collection businesses in an ordinary, business-like way, using employees and agents where it makes sense to do so, so long as the debt collector, its employees, and its agents all comply with the FDCPA.  Debt collectors may have employees or other debt-collector representatives and fiduciaries to whom they may entrust consumer account data without committing a *per se* violation of the FDCPA.  *See*, *e.g., LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1201-02 (11th Cir. 2010) (debt collector liable for debt collector partner's breach of the FDCPA); *see also White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) (the FDCPA "is not aimed at the shareholders of debt collectors").  Congress contemplated that the "Debt collector" who may have access to a consumer's information may comprise more than a

single, individual human being.   Thus, a debt collector who relies on the assistance of employees

or agents, who are subject to the same stringent rules governing legal debt collection activities, in

no way offends the interests of the FDCPA.   Indeed, Courts have routinely imposed vicarious

liability on collectors for actions taken under their control or authority.   *See*, *generally*, *Bodur v.*

*Palisades Collection*, LLC, 829 F. Supp. 2d 246, 258-59 (S.D.N.Y. 2011) (citing *Pollice v. Nat'l*

*Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000)); *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d

1507, 1516 (9th Cir. 1994); *Suquilanda v. Cohen & Slamowitz, LLP*, No. 10 Civ. 5868 PKC, 2011

WL 4344044, at *4 (S.D.N.Y. Sept 8, 2011); *DeFazio v. Leading Edge Recovery Solutions, LLC,*

No. 2:10–cv–02945-WJM-MF, 2010 WL 5146765, at *3 (D.N.J. Dec. 13, 2010); *Martsolf v. JBC*

*Legal Grp., P.C.,* No. 1:04–CV–1346, 2008 WL 275719, at *10 (M.D. Pa. Jan. 30, 2008).   If a

commercial mail vendor, were to publicize information about a consumer, the consumer would

still be able to seek relief under the FDCPA against the collector who hired the vendor.

It is clear from the case law, as well as basic principles of principal and agency law, the

letter vendors here are not third parties for entities like Defendant, but are acting in their capacity

as Defendant's agent.   Section 1692c(b) only bars communications to third parties.   Therefore, this

Court should dismiss the Complaint on that basis.

> **D.     Plaintiff's Reading of the FDCPA, if Enforced, Violates the First Amendment**
>
> **1.     Interpreting the FDCPA to Prohibit the Use of Mail Vendors is a Content-Based Restriction on Protected Speech and is Subject to Strict Scrutiny**

Plaintiff's reading of the FDCPA, if allowed by this Court, would constitute an

unconstitutional content-based restriction on protected speech.   Under First Amendment principles

and recent Supreme Court guidance, such a restriction would be subject to strict scrutiny review

by the Court.   The restriction does not advance a compelling governmental interest nor is it

narrowly tailored to advance that interest.   While debt collectors' communications with mail

vendors may not be the classic form of speech given rigorous First Amendment protection, the Constitution still applies.  Thus, this Court must deny these claims as applied.

The First Amendment to the Constitution states, in pertinent part, that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const., amend. I. "Above 'all else, the First Amendment means that government' generally 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'"  *Barr v. American Association of Political Consultants*, 140 S. Ct. 2355, 2346 (2020) (*quoting Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95, 92 S. Ct. 2286 (1972)).  When laws, whether restrictive or compulsive, "'target speech based on its communicative content'" they generally "'are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.'" *National Institute of Family and Life Advocates v. Becerra,* 138 S. Ct. 2361, 2371, 201 L. Ed.2d 835 (2018).

Commercial speech is a special category of content-based speech and is "expression related solely to the economic interests of the speaker and its audience."  *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 561 (1980) (citing *Virginia State Bd. of Pharmacy Bd. v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976)).  In other words, commercial speech's primary motivating factor is economic.  *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 (1983).  The speech here can only be classified as commercial.  In the past, courts have examined such laws under intermediate scrutiny.  The Supreme Court of the United States, in *Barr v. AAPC, supra*, instead applied a more rigorous standard in the context of examining a restriction on commercial speech under the Telephone Consumer Protection Act , 47 U.S.C. § 227 (the "TCPA").

23

The Court in *Barr* found that an exemption to a broad ban on "robocalls," which specifically exempted calls made for the collection of government debts, was an unconstitutional content-based provision subject to strict scrutiny under the Court's precedent in *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 165 (2015). *Barr*, 140 S. Ct. at 2346. The Court discussed that the restriction drew a distinction based on both the message the speaker made as well as the identity of the speaker itself. *Id.* at 2346-47. The Court also disagreed with the government's argument that the legality of the call depended on whether the caller was engaged in certain economic activity and not the content of the speech. *Id.* at 2347 (*citing Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563-64 (2011) (holding a law singling out pharmaceutical marketing for unfavorable treatment was content-based).

That same logic applies to the restriction here. A debt collector can communicate with a consumer about almost any topic and not run afoul of § 1692c(b)—that is, unless it is a communication "in connection with the collection of any debt." The Supreme Court has also provided guidance that if authorities need to examine the content of the message that is conveyed to determine whether a violation has occurred, then it is content-based. *See McCullen v. Coakley*, 573 U.S. 464, 479 (2014). In order to determine whether there is an FDCPA violation, regulators and courts must literally examine the content of a communication to determine whether such a communication was "in connection with the collection of a debt." Thus, it is clear that the prohibition by its plain terms is a content-based restriction. The Court should follow *Barr* and other courts that have held that strict scrutiny is the appropriate standard in which to evaluate a content-based restriction on commercial speech. *See Int'l Outdoor, Inc.* v. *City of Troy, Michigan*, 974 F.3d. 690, 703 (6th Cir. 2020) ("[A] regulation of commercial speech that is not content-neutral is still subject to strict scrutiny under *Reed*"); *Otto v. City of Boca Raton, Fla.*, 981 F.3d

854, 869-870 (11th Cir. 2020) (holding laws that restricted the counseling of minor patients to change their sexual orientation was subject to strict scrutiny despite being involved in a business.)

Statutes that are subject to strict scrutiny are upheld only if Congress has narrowly tailored them to "promote a compelling interest," meaning they must be "the least restrictive means to further the articulated interest." *Sable Communications of Cal. v. FCC*, 492 U.S. 115, 126 (1989). "No one questions that protecting consumer privacy qualifies as a legitimate and 'genuine' interest for the government to pursue. . . .  But before the government may censor . . . speech based on its content, it must point to a *compelling* interest." *Barr*, 140 S. Ct. at 2364 (Gorsuch, J., concurring in part, and dissenting in part)(emphasis in original).  Stated differently, the question is whether the particular third-party restriction in § 1692c(b) as applied is "necessary to serve a compelling state interest and is narrowly drawn to achieve that end."  *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231 (1987).  As discussed, the FDCPA was enacted to prevent illegitimate debt collection practices, including protecting consumers from the embarrassment of having family, friends, neighbors, or employer find out they are in debt.  Section 1692c(b), as applied by Plaintiff, is not necessary to advance that interest, and in fact, does little to advance that interest to survive strict scrutiny review.   Even if such an interest could be a compelling interest, implementing a blanket ban on incidental third-party communications is not narrowly tailored to fit the interest at stake here.  As discussed *infra*, there are several alternative readings this Court can employ that properly tailor the statute for the interest at stake; however, as read by Plaintiff, the provision is an unconstitutional restriction on speech.

### 2.  Plaintiff's Reading of the FDCPA Violates the First Amendment Under Intermediate Scrutiny

Should this Honorable Court decide that the content-based restriction should not be evaluated under strict scrutiny, and choose to evaluate the provision under intermediate scrutiny,

§ 1692c(b) as applied would **still fail** its constitutional test as it does not directly advance Congress's interest in preventing abusive debt collection practices and is not narrowly tailored to achieve that purpose.  *See Central Hudson Gas & Elec. Corp.*, 447 U.S. at 564-65; *see also Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367, (2002). "A proper inquiry should examine the seriousness of the speech-related harm, the importance of the countervailing objectives, the likelihood that the restriction will achieve those objectives, and whether there are other, less restrictive ways of doing so." *Barr*, 140 S. Ct. at 2362 (Breyer, J., concurring, in part, and dissenting, in part).

Plaintiff's purported reading of §1692c(b) does not "directly advance" Congress's purpose in banning abusive third party "pressure contacts."  Any interpretation of Section 1692c(b) but forth by Plaintiff extends far beyond prohibiting abusive practices of contacting bystanders such as the "consumer's friends, neighbors, relatives, or employer."  Eliminating routine, confidential business communications is not a "substantial" interest behind Section 1692c(b), and prohibiting those communications does nothing to prohibit abusive debt collection practices.  Even the Eleventh Circuit, which wrongly concluded that the plaintiff had stated a claim under § 1692c(b) for the use of letter vendors admitted "We recognize, as well, that those costs may not purchase much in the way of 'real' consumer privacy, as we doubt that the [mail vendors] of the world routinely read, care about, or abuse the information that debt collectors transmit to them." *Hunstein,* 994 F.3d at 1352.

For similar reasons, Plaintiff's reading of Section 1692c(b) is far "more extensive than necessary to serve" the congressional interest behind Section 1692c(b), prohibiting all such communications to all third parties, minus only six enumerated exceptions. *Central Hudson Gas & Elec.*, 447 U.S. at 566.  By contrast, the Gramm-Leach-Bliley Act ("GLBA")—perhaps the

broadest national privacy-focused law—only prohibits disclosing specific "nonpublic personal information," and does not permit consumers to opt out of disclosures between the financial institution and contractual partners with a confidentiality agreement. *See* 12 C.F.R. §§ 1016.10, 1016.13.  Similarly, the Health Information Portability and Accountability Act ("HIPAA") generally prohibits sharing of protected health information, but contains numerous exceptions, including permitting communications with third parties for the purposes of treatment and payment. *See* 45 C.F.R. § 164.506.  GLBA and HIPAA demonstrate that Congress and rulemaking agencies are capable of crafting speech restrictions that are not "more extensive than necessary to serve" Congress's goal of protecting privacy.  Under Plaintiff's interpretation, the expansive reach and limited exceptions to § 1692c(b) fail to meet that standard.

Interpreting the FDCPA to cover vendor communications would provide no alternative channels for such communications by debt collectors.   Under this interpretation, any communication with a party not specifically exempted by Section 1692c(b) would result in an FDCPA violation.  For example, a debt collector who leaves a voicemail message on a consumer's cell phone could violate Section 1692c(b) because the message would actually be stored on the servers on the consumer's cell phone provider and accessible to the provider.  A similar analysis would occur for e-mails and text messaging.  This would substantially curtail alternative channels of communication which, in turn, does not satisfy the final prong for intermediate scrutiny. Therefore, the Court cannot allow the statute to be interpreted in this unduly burdensome matter.

### 3.   This Court Should Follow the Canon of Constitutional Avoidance by Interpreting Section 1692c(b) in a way that Does Not Violate the Constitution

This Court should dismiss Plaintiff's Complaint and interpret the FDCPA in a way that does not run afoul of First Amendment principles.  *Gomez v. United States*, 490 U.S. 858, 864

(1989) ("It is our settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question."; *see also United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909) ("[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter."); *I.N.S. v. St. Cyr*, 533 U.S. 289, 299-300 (2001) ("[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' . . . we are obligated to construe the statute to avoid such problems.")  The Court must employ the constitutional doubt canon that avoids rendering the provision unconstitutional.

The Court should consider a "reasonable alternative interpretation."  For example, the Court could interpret the operative section akin to § 1692e, a communication made, "for the purpose of collecting a debt," *see Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1303 (11th Cir. 2014), or could require that the communication contain a demand for payment.  The Court can also adopt a reading of the statute that accounts for common-law principles of agency and business relationships, as well as the common-law understanding of the required elements for the tort of public disclosure of private facts.  Certain state legislatures have crafted similar laws, but with exceptions deemed to have a "legitimate business need" for the information.  *See* Cal. Civ. Code § 1788.12(e) (providing a safe-harbor for a debt collectors' communications with "any other person reasonably believed to have a legitimate business need for such information"); accord, *e.g.*, Fla. Stat. § 559.72(5); Iowa Code § 537.7103(3)(a)(2); Md. Code, Commercial Law, § 14-202; Wis. Stat. § 427.104(1)(e).

However, this Court decides to interpret Section 1692c(b), it must do so to prevent a reading that renders the whole provision unconstitutional as a restriction of speech violative of the First Amendment.  Doing so here, would also compel the dismissal of Plaintiff's claim under 15 U.S.C. § 1692c(b).

> **E.** **This Court Should Defer to the Interpretations of the Agencies Authorized to Regulate and Enforce the FDCPA**
>
> **1.** **The Consumer Financial Protection Bureau Has Performed Oversight on Debt Collectors and Has Not Found These Contacts in Violation with the Law.**

As part of its analysis, this Court should defer to the federal agencies tasked with regulating and enforcing the FDCPA against debt collectors, and similarly hold that these contacts with letter vendors do not run afoul of the statute.  As part of the Dodd-Frank Act, Congress authorized the Consumer Financial Protection Bureau ("CFPB") to enact and enforce rules and regulations related to the FDCPA.  CFPB was created with the purpose of implementing and enforcing "federal consumer financial law consistently" and to ensure, among other things, "that markets for consumer financial products and services are fair, transparent, and competitive."  12 U.S.C. § 5511(a).  Debt collectors supervised by the CFPB are subject to examination and enforcement regarding their own and their service providers' protection of consumer information.  In those years, the CFPB has not once taken action against a debt collector for using a letter vendor.  To the contrary, CFPB acknowledges it is often appropriate for supervised nonbanks (including many debt collectors) to outsource certain functions to service providers to conserve resources and rely on the expertise from those providers that would not otherwise be available without significant involvement.  *See* CFPB Compliance Bulletin and Policy Guidance; 2016-02, *Service Providers*.  Available at https://files.consumerfinance.gov/f/documents/102016_cfpb_OfficialGuidance ServiceProviderBulletin.pdf (last downloaded August 18, 2021).

Furthermore, the CFPB Supervision and Examination Manual repeatedly acknowledges the use of collection vendors.  The manual states, "This module assesses whether the entity is a 'debt collector' under the FDCPA and therefore subject to that Act.  In addition, this module addresses other aspects of the entity's business model, *including affiliate and vendor relationships*, internal controls, and related account management issues."  CFPB Supervision and Exam Manual at 318 (Sept. 2020), available at https://files.consumerfinance.gov/f/documents/cfpb_supervision-and-examination-manual.pdf (emphasis added).  The Manual also recognizes that third parties facilitate communications between debt collectors and consumers, stating, "Based on the results of the risk assessment of the entity, examiners should review for potential unfair, deceptive, or abusive acts or practices . . . Document Review . . . Agreements with *affiliates and third parties that interact with consumers* on behalf of the entity."  *Id.*, at 1727-1728(l) (emphasis added); *see also id.* at 1732 ("Evaluate how the entity monitors the activities of employees and third-party contractors . . . .").  Based on all the above, it is clear the CFPB anticipates that debt collectors employ the use of third-party vendors, including letter vendors.

### 2. The CFPB Explicitly Authorized the Use of Letter Vendors in Finalizing Regulation F, 12 C.F.R. Part 1006

In addition to acknowledging that debt collectors utilize letter vendors through its exam modules and manuals, CFPB has used its rulemaking authority to reaffirm the debt collector's use of vendors in their day to day operations.  In October and December of 2020, CFPB finalized amendments to Regulation F, 12 C.F.R. Part 1006, in an attempt to provide guidance to debt collectors while bringing the FDCPA into an era of modern communications.  Before the publication of Regulation F, the CFPB undertook considerable research of the vendors and service providers supporting the debt-collection industry.  To complete its research, the CFPB interviewed not only debt collectors but also many outside vendors who provide products, services, and

30

technology in connection with debt collection. During its seven-year rule making process, the CFPB published numerous documents that assumed the collection industry relies on vendors, including letter vendor. In its 650-page rulemaking notice, the CFPB endorsed the industry's reliance on vendors because they help debt collectors comply with their FDCPA obligations. *See* Debt Collection Practices (Regulation F), 86 FR 5766 at 5845 (January 19, 2021).

In Regulation F, the CFPB is clear that a debt collector may use that vendor's mailing address as its own when satisfying the collector's obligation to disclose its mailing address to consumers. *See* 12 C.F.R. § 1006.34(c)(4)(iii); *see also*, Debt Collection Practices (Regulation F), 86 FR 5766, 5801 ("[A] debt collector may disclose a vendor's mailing address, if that is an address at which the debt collector accepts disputes and requests for original-creditor information."). The CFPB further contemplates that consumers will send disputes and information requests regarding their debts to debt collectors using the vendor's mailing address. Debt Collection Practices (Regulation F), 86 FR 5766, 5818 ("Thus, under the final rule, a debt collector may include a vendor's address in the consumer-response information if that is the address that the debt collector discloses pursuant to § 1006.34(c)(2)(i).")

Indeed, the CFPB explicitly referenced debt collectors' use of letter vendors in connection with the dissemination of debt validation notices, stating as follows:

> The provision will require debt collectors to reformat their validation notices to accommodate the validation information requirements. The Bureau expects that any one-time costs to debt collectors of reformatting the validation notice will be relatively small, particularly for debt collectors who rely on vendors, because the Bureau expects that most vendors will provide an updated notice at no additional cost. The Bureau understands from its outreach that many covered persons currently use vendors to provide validation notices. [ . . . ] Debt collectors and vendors will bear costs to understand the requirements of the provision and to ensure that their systems generate notices that comply with the requirements,

31

> although these costs will be mitigated somewhat by the availability
> of a model notice.

Debt Collection Practices (Regulation F), 86 FR 5766 at 5845 (January 19, 2021)

Because vendors help debt collectors comply with their debt collection and consumer protection obligations, Regulation F expressly recognizes and endorses debt collectors' use of letter vendors. Additionally, in response to concerns that Regulation F's call restrictions were too restrictive, the CFPB recognized that debt collectors could "reduce the number of calls needed to establish a [right party contact] by purchasing higher-quality contact information from data vendors." Debt Collection Practices (Regulation F), 85 FR 76734-01, 76874 (Nov. 30, 2020). The CFPB not only knows collectors utilize vendors, but expressly encourages them to do so.

### 3. The Federal Trade Commission Similarly Has Not Found that the Use of Vendors Violates the FDCPA

Like the CFPB, the FTC has also been empowered to enforce and regulate debt collectors under the FDCPA. The FTC has been specifically in favor of its approval of the use of mail vendors. The FTC is authorized to bring enforcement actions for violators of 1692c(b), and at no point the Commission characterized a debt collector's provision of information to one of its vendors as a violation of the FDCPA. Recognizing a debt collector's need to convey debt-related information through mediums such as telephone operators and telegraph clerks without violating § 1692c(b), the FTC issued staff commentary confirming that conveyances incident to the use of those mediums do not violate § 1692c(b). Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 FR 50097-02. That commentary also mentioned "[A] debt collector's agent may give the [validation] notice, as long as it is clear that the information is being provided on behalf of the debt collector." *Id*. at 50108.

The FTC has also recognized several other examples, where incidental communications with third parties do not run afoul of the FDCPA.  For example, the FTC has said that the FDCPA does not prohibit third party communications necessary to conduct debt collection litigation activities, such as an attorney for the creditor communicating with a potential witness in order to establish the existence of a debt.  *See* FTC Staff Commentary § 805(b), cmt 8 (Dec. 13, 1988). Another example is where the FTC allowed the use of a vendor who translated from English to Spanish as a permissible third-party communication.  *See* FTC Opinion, LeFevre to Zbrzeznj (Sept. 21, 1992).  In the context of telegrams, discussed above, the FTC advised that "A debt collector may contact an employee of a telephone or telegraph company in order to contact the consumer, without violating the prohibition on communication to third parties, if the only information given is that necessary to enable the collector to transmit the message to the consumer."  FTC Staff Commentary, § 805(b), cmt. 3.  None of these comments suggest that the FTC saw such contacts with vendors as violations of the law.

### 4. This Court Should Employ Deference to the CFPB and FTC in Holding these Contacts to be Permissible

When Congress has delegated rulemaking authority to an agency, and the regulation at issue was promulgated in the exercise of that authority, the regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute. *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001) (*citing Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984).  For the case at issue, there is a question of clarity and ambiguity in the proper reading of § 1692c(b).  Thus, this Court should defer to the CFPB and the FTC, who have clearly operated as if the use of such vendors is legal, and whom the agencies have encouraged debt collectors to utilize.

33

Even if this Court does not afford *Chevron* deference, at a minimum, this Court should accord the above excerpts of Regulation F and the findings of the CFPB, as well as the findings of the FTC deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-140 (1944); *see*, *e.g.*, *Mead Corp.*, 533 U.S. at 234 ("[A]n agency interpretation may merit some deference whatever its form, given the specialized experience and broader investigations and information available to the agency and given the value of uniformity in its administrative and judicial understandings of what a national law requires.") (internal citations and quotations omitted).  Tasked with the authority and resources to do so, the CFPB and FTC have spent years researching, guiding, and enforcing consumer protection laws like the FDCPA.  At no point have they indicated that the use of vendors like letter vendors violate the FDCPA as unauthorized third-party contacts.  This Court should defer to their expertise and knowledge and hold that such communications are not FDCPA violations.

**F.      Plaintiff's Interpretation of the FDCPA Would Have Disastrous Policy Implications**

If the Court were to agree with Plaintiff's interpretation of § 1692c(b) and prohibit the use of third-party mail vendors by debt collectors, the Court would upend a common practice in the Consumer Financial Services industry without advancing any legislative purpose or overarching concern with consumer privacy.  In its fact-gathering rulemaking process in putting together Regulation F, the CFPB found that 85% of collectors employed the use of mail vendors.  Debt Collection Practices (Regulation F), 84 FR 23274, 23386, n. 684.  Letter vendors ensure that the compliance decisions of management are implemented and protected through mechanisms that guarantee accurate delivery of content and prevent alteration of, or interference with otherwise-compliant letters.  Similarly, voice analytics vendors use complex software to review the words used in calls, ensuring that collectors are not engaging in the sort of abusive and threatening

practices that led to the enactment of the FDCPA.  Further, cloud vendors provide reliable, secure data storage that guards against data breaches and disaster-related losses of data that would impair the accuracy of consumer accounts.  It is not just debt collectors using mail vendors where personal information about the recipient is shared with the vendor.  This happens with banks as well who use mail vendors to send out statements, insurance companies to provide information about coverage and premiums, election campaigns, and labor unions.

Such an interpretation could be read to expose debt collectors to liability for the use of virtually any third-party vendor during the debt collection life cycle, including, perhaps, payment processors.  After all, a debt collector sending consumer information to a third-party company for the performance any function relating to debt collection, no matter how ministerial or pro-consumer, would arguably also "concern," be in "with reference to," or "b[ear] a relationship or association to" its collection of [the] debt.  *See Hunstein,* 994 F.3d at 1349. (citation omitted).  If the sending of consumer information to a third party for purposes of printing a letter is sufficient for § 1692c(b) liability, then the same could be true of sending the consumer information to a payment processor for purposes of processing a payment that the consumer requests to make electronically.  Read this way, the FDCPA would drastically limit a consumer's payment options, including forcing collectors to offer inconvenient products to make payments or possibly mandate the use of cash payments.  Debt collectors would also likely be forced to bring additional employees and functions in-house.  A collector would also have to expand resources and spend money on new employees with expertise or require complex training.  A debt collector cannot, for example, simply initiate entry into the ACH network on its own as the Nacha rules and regulations require that an ACH member bank enter into a written agreement with any entity who seeks to initiate credits and debts electronically.  *See* 2021 Nacha Operating Guidelines, § 6.50.

Other industries would be at risk as a result of the extensive reach of such a ruling.  For example, the healthcare industry would be crippled as the prohibition on the use of vendors by collectors would impede the recovery of amounts due to medical providers necessary to pay its ongoing expenses.  The Affordable Care Act requires a hospital organization to make reasonable efforts to determine whether an individual is eligible for assistance under the hospital organization's financial assistance policy before engaging in Extraordinary Collection Actions *i.e.* institute debt collection activity.  By removing the ability to outsource sending statements, delayed mailings will occur that would directly harm patients who could have qualified for assistance but were unable to due to missing certain deadlines.  This would create scenarios where hospitals are tied up handling collection matters as opposed to focusing on providing healthcare services.  Additionally, a hospital could not communicate with its patients to take advantage of various forms of debt financial assistance, which benefits both consumers and medical providers.

Medical providers are already required to take certain precautions under HIPAA, which contemplates the type of third-party disclosure at issue here and has set guidelines for it.  Most healthcare providers and health plans do not carry out all of their activities and functions by themselves.  The Privacy Rule allows covered providers and health plans to disclose protected health information to these "business associates" if the providers or plans obtain satisfactory assurances that the associate will use the information only for the purpose for which it was engaged by the covered entity.  Covered entities may disclose protected health information to an entity in its role as a business associate only to help the covered entity carry out its healthcare functions— not for the business associate's independent use or purposes, except as needed for the proper management and administration of the business associate.  45 C.F.R. § 164.502.  Contracts involved here contain protective language to enforce these privacy interests.

A prohibition on vendors would affect nearly every bank, credit union, finance company, and loan servicer.  Vendor-performed tasks were designed with pro-consumer goals, such as preventing foreclosure, limiting property abandonment, and preventing lapses in tax payments and property insurance coverage.  Generally, it lowers costs for consumers.  Loan servicers will have to reconsider whether they can engage third parties such as housing counselors, tax-and-insurance monitoring services, and property maintenance companies without violating the FDCPA.  Under Plaintiff's interpretation, Section 1692c(b) severely restricts loan servicers and debt collectors' ability to service loans and collect debts by prohibiting them from employing business partners and vendors. As the Federal Reserve Bank of New York explained, such restrictions on debt collection practices harm creditors and consumers—particularly consumers who have the greatest need for credit.  *See generally* Fed. Reserve Bank of N.Y., Staff Report No. 814 (May 2017).

In 43 years, no circuit court, prior to the recently vacated *Hunstein* opinion, found the harmless practice of using letter vendors to be a violation of the FDCPA.  This is an established industry practice that has been audited by the CFPB and FTC for years. The industry has relied on agencies to provide commentary and guidance to its practices and those agencies have found no concerns.  Instead, a ruling prohibiting the practice could cost millions of dollars for businesses across industries to, among other consequences, bring its mailing operations in house, including installing industrial sized automated printers, paper cutters, paper folders, and envelope stuffers, which would require it to also expand its physical location to house these machines.

Last, permitting such claims would open numerous entities to unlimited legal liability.  Such a ruling would "create [further] incentives to file lawsuits even where no actual harm has occurred," often with the vexatious aim of securing only attorney's fees.  *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 616 (2010) (Kennedy, J., dissenting).  The

37

FDCPA provides for statutory damages of up to $1,000 per violation, 15 U.S.C. § 1692k(a)(1), (2)(A), allows successful plaintiffs to collect attorneys' fees, *Id.* at § 1692k(a)(3), and permits class actions, *Id.* at § 1692k(a)(2)(B)., opening the door to possible damages of up to the lesser of 1% of a defendant's net worth or $500,000.

In a recent opinion, Judge Gary Brown in the United States District Court for the Eastern District of New York dismissed several copy-cat letter vendor cases on standing grounds, following the *Ramirez* decision. Judge Brown also spent a large portion of the opinion acknowledging the absurd results of permitting such actions, compiling similar observations from his fellow colleagues on the bench. He wrote:

> Plaintiff's attorney's willingness to advance such a far-fetched legal theory is due, in all likelihood, to the provisions in the consumer protection statute at issue affording statutory damages without proof of harm and the availability of class action treatment. Congress enacted the FDCPA in order to combat egregious abuses of debtors, abuses that are real and troubling. It is almost as troubling, however, for an attorney to take unreasonable advantage of Congress's good intentions and the sound legislation it has enacted.

*In re FDCPA Mailing Vendor Cases*, __ F. Supp. 3d __, 2021 WL 3160794, at *2 (E.D.N.Y. July 23, 2021) (quoting *Turner v. Asset Acceptance, LLC*, 302 F. Supp. 2d 56, 59 (E.D.N.Y. 2004)).

Judge Brown added, "These cases are often brought for the non-salutary purpose of squeezing a nuisance settlement and a pittance of attorneys' fees out of a collection company, which it will often find cheaper to pay than to litigate. A cottage industry among limited players—plaintiffs' lawyers, debtors, and even defendants' lawyers—appears to be the primary progeny of the statute." *In re FDCPA Mailing Vendor Cases*, 2021 WL 3160794, at *2 (*quoting Huebner v. Midland Credit Mgmt., Inc.*, 85 F. Supp. 3d 672, 673 (E.D.N.Y. 2015)). Judge Brown identified that "the promise of easy settlement and attorneys' fees" have incentivized plaintiffs' attorneys to apply "considerable imagination in devising theories of violation." *In Re FDCPA Mailing Vendor*

Cases, 2021 WL 3160794, at *3.  Citing the Supreme Court's decision in *Ramirez*, the court summarily dismissed several letter vendor actions.  *In re FDCPA Mailing Vendor Cases*, 2021 WL 3160794, at *8.

## IV.    <u>CONCLUSION</u>

Wherefore, Defendant respectfully requests that this Court grant Defendant's Motion for Partial Judgment on the Pleadings and dismiss Plaintiff's claim under 15 U.S.C. § 1692c(b) of the Fair Debt Collection Practices Act.

Respectfully submitted,

*s/ Leah T. Rudnicki*
Margaret J. Meier
State Bar No.: 24104948
Leah T. Rudnicki
State Bar No. 24033387
**THE RUDNICKI FIRM**
6305 Waterford Blvd., Suite 325
Oklahoma City, Oklahoma 73118
Telephone: (405) 445-7422
Facsimile: (405) 445-7421
Email: <u>margie@rudnickifirm.com</u>
Email: <u>leah@rudnickifirm.com</u>
**ATTORNEYS FOR DEFENDANT,**
**GC SERVICES LIMITED PARTNERSHIP**

## CERTIFICATE OF
## SERVICE

I, the undersigned, do hereby certify that on this 13th day of December, 2021, I electronically transmitted the document to the U.S. District Court for the Southern District of Texas Clerk's office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the Following CM/ ECF registrant(s):

Jennifer Ann McLaughlin
Victor T. Metroff
Mohammed O. Badwan
Sulaiman Law Group, Ltd.
2500 South Highland Avenue
Suite 200
Lombard, IL 60148
jmclaughlin@sulaimanlaw.com
mbadwan@sulaimanlaw.com
vmetroff@sulaimanlaw.com

**ATTORNEYS FOR PLAINTIFF**

*s/ Leah T. Rudnicki*
Leah T. Rudnicki